# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### COLUMBUS DIVISION

Nancy L. Scott
(Enter Above the Name of the Plaintiff in this Action)

vs.

Walnut Grove Health and Rehabilitation Center
(Enter above the name of the Defendant in this Action)

If there are additional Defendants, please list them:

Greystone Healthcare Management

2:17cv615

Judge Watson

MAGISTRATE JUDGE JOLSON

## COMPLAINT

I. Parties to the action:

Plaintiff: Place your name and address on the lines below. The address you give must be the address where the court may contact you and mail documents to you. A telephone number is required.

Nancy L. Scott
Name - Full Name Please - PRINT

1509 Prospet Street
Street Address

Coshocton, Ohio 43812-2643
City, State and Zip Code

740-622-497
Telephone Number

If there are additional Plaintiffs in this suit, a separate piece of paper should be attached immediately behind this page with their full names, addresses and telephone numbers. If there are no other Plaintiffs, continue with this form.

Defendant(s):

Place the name and address of each Defendant you listed in the caption on the first page of this Complaint. This form is invalid unless each Defendant appears with full address for proper service.

1. __Walnut Grove Health and Rehabilitation Center__
   Name - Full Name Please

   __1433 Walnut Street__
   Address: Street, City, State and Zip Code

2. __Coshocton, Ohio 43812__

3. __Greystone Healthcare managment__

   __4042 Park Oaks Boulevard, Suite 300__

4. __Tampa, Florida 33610__

5. _____

6. _____

If there are additional Defendants, please list their names and addresses on a separate sheet of paper.

II. Subject Matter Jurisdiction

Check the box or boxes that describes your lawsuit:

☐ Title 28 U.S.C. § 1343(3)
   [A civil rights lawsuit alleging that Defendant(s) acting under color of State law, deprived you of a right secured by federal law or the Constitution.]

☐ Title 28 U.S.C. § 1331
   [A lawsuit "arising under the Constitution, laws, or treaties of the United States."]

☐ Title 28 U.S.C. § 1332(a)(1)
   [A lawsuit between citizens of different states where the matter in controversy exceeds $75,000.]

☐ Title _____ United States Code, Section _____
   [Other federal status giving the court subject matter jurisdiction.]

III. Statement of Claim

Please write as briefly as possible the facts of your case. Describe how each Defendant is involved. Include the name of all persons involved, give dates and places.

Number each claim separately. Use as much space as you need. You are not limited to the papers we give you. Attach extra sheets that deal with your statement claim immediately behind this piece of paper.

See attached document

IV. Previous lawsuits:

If you have been a Plaintiff in a lawsuit, for each lawsuit state the case number and caption. (Example, Case Number: 2:08-cv-728 and Caption: John Smith vs. Jane Doe).

| Case Number | Caption |
|---|---|
| _____ | _____ vs. _____ |
| _____ | _____ vs. _____ |
| _____ | _____ vs. _____ |

V. Relief

In this section please state (write) briefly exactly what you want the court to do for you. Make no legal argument, cite no case or statutes.

Find the defendant(s) guilty of gross negligence in the matter causing the premature death of Howard Scott and causing the defendant(s) to be ~~responsible by awarding the Plaintiff a maximine penalty of $753,000~~ for loss of a loving parntner of 62 years and suffering over the cause of his death.

I state under penalty of perjury that the foregoing is true and correct. Executed on this _14_ day of _July_, 20_17_.

_Nancy L Scott_
Signature of Plaintiff

## STATEMENT OF CLAIM

This case involves Ohio Revised code 2125.01 Action for wrongful death and 2125.02 Parties – damages where negligence on the part of care givers caused Howard Scott's death.

Howard had brain surgery for a blood clot on May 11, 2016 at the Genesis Hospital in Zanesville, Ohio. On May 19, 2016, he was transported to the Walnut Grove Health and Rehabilitation Center in Coshocton, Ohio where he had been recuperating. Originally, he was not very responsive to the rehab efforts. On June 21, 2016 Tammy Alverson MD, his primary care doctor, recommended all medications be suspended. There was almost an immediate improvement to his responsiveness. For example, on June 26th, he sang happy birthday to his son, (Jeff Scott) in North Carolina on a cell phone that was recorded. He was recognizing friends and relatives. On July 16, He spoke over the phone to his daughter-in-law (Karen Scott). He was feeding himself, and walking with a walker with guarded assistance from aides.

On July 22nd, Howard was fine during day. He was walking with walker, taking therapy and feeding himself. On the 10PM to 6AM shift of the 22nd and 23rd something happened. No documentation of an incident report was recorded by the employees on staff Jolina Holpp (nurse on duty) and Karissa Wilson (aide). His general care physician, Dr. Alverson was not notified nor was I, his wife.

From progress notes from PT personnel and skilled nurses, one can see the chronology of progress from May 20th thru July 22nd. First the summary reports of progress and goals entered as Exhibit A (3 pages). These reports show a continued progress with new goals being met by Howard until he could function no more on July 23rd due to new injuries. The detailed reports entered as Exhibit B (15 pages) from the same personnel starting with June 23$^{rd,}$ as that was when he became more conscious, show improvement on a daily basis. In particular, it should be duly noted that on July 22nd's entry, *"Patient performed standing activity for 5 minutes of tossing rings at stick...He completed sit to stands x10 frim WC and good use of hands pushing away from WC. Finished with walking to the dining room with rollator and min A to guide walker in proper direction as he did follow thru with verbal direction.* Electronically signed: Mark Mullins.

On July 23rd, I went to visit Howard around 2PM, Nurse Laurie Clapper, which came in on the 6AM shift, she immediately drew my attention to a break of the skin

1

on Howard's head (Side forehead), small breaks of skin behind ear and a couple of cuts on his forearm. Nurse Clapper had bandaged his arm and cleaned his head twice while I was there. He was not responding at all. The staff thought he was tired.

There was a "Late Entry" by nurse Tina Parks on July 23rd at 14:37 Exhibit C; *Resident has had a history of being agitated and combative with staff.* (NOT TRUE) *Same was noted as resident was on shower this AM prior to the skin tears noted on the right elbow….No indications after talking with staff that worked from 7/22 to 7/24 that this resident had a fall or any non-specified injuries.* REALLY? Who said anything about a fall?

On July 24th, I went back to visit him and his condition was worse. He was shaking with no eye contact, no speech and being fidgety. I asked Dr. Alverson to be called and the doctor ordered a CT Scan at Coshocton Hospital, which is right next to Walnut Grove. The scan report summary, Exhibit D, states issued by Dr. Valshnav Praitkm states, *"…acute hemorrhage of the superior right frontal lobe …There is intraparenchymal hemorrhage involving the posterial margin of the left temporal lobe.* The report also said, *"No convincing evidence of acute cortical stroke at this time."* I asked if was due to the new injury on his head. Dr. said yes it was.

Due to the Coshocton Hospital not having Neurosurgery on July 24th, Howard was sent to the The Ohio State University Wexner Medical Center in Columbus. ER performed another CT Scan. Their report consisting of 33 pages (10 pages Exhibit E) states that the patient must have had a fall to cause such an injury. For example, page 20 of 23 states, *CLINICAL INDICATIONS; sp possible fall,* page 23 of 33 states *He is admitted to OSUMC from an OSH with acutely altered mental status and a new intracranial hemorrhage on CT, presumed secondary to an unwitnessed fall,* page 26 of 33 states, *"He was at his nursing home doing well until last Friday. It is presumed that the patient suffered an unwitnessed fall this past Friday—abrasions to R scalp. Prior to Friday, he was speaking well and appropriately. After Friday, he became acutely altered—he was no longer able to get out of bed, feed himself, or speak appropriately.*

On July 26th discussions were held with family and myself by Dr Jeffrey Hatef saying that additional surgery was not possible and his present condition was most likely permanent. It was recommended and agreed to have Howard returned to Coshocton for Hospice care.

On July27th, Howard was admitted to the hospice unit at Coshocton Hospital. He was not expected to last more than a few days. Due to insurance only authorizing

2

three days of hospice care at the hospital, he was sent home with hospice care on July 30th to die at home. He lasted another agonizing nine days, passing on August 6, 2016. I had to look at him every day in our living room as that was the only room a hospital bed could be accommodated.

Clearly something happened the night of July 22nd or early morning hours of July 23rd. Howard's room was within 20 feet or so of the front nurse's station. He had a buzzer affixed to his bed so if he tried to get up on his own it would go off. That scenario, happened one day in July while I was visiting and the nurses and aides on duty came flying down the hall to his room.

I called Nurse Parks (head of nursing) at home on July 24th to report the change and obvious injuries. She said she would investigate. Nothing was ever reported to me by anyone, other than the suspicious "Late Entry" by her.

Walnut Grove's Executive Director, Dinese Shample refused to give all the medical records upon request. While trying to obtain Howard's there was stalling and excuses that Corporate had to view the records and approve the release. My brother, James Larr, spoke with legal department at Greystone Healthcare on July 28th (Corporate owners of the facility) in Tampa Florida. After a couple of calls they said the records will be made available that same day at a cost and that the reason they like to review them is the cost in that a lot of records are just duplicates. My brother told them we wanted all of them regardless of the cost. The records were obtained on July 28, for a cost of $109.00. However, only the records through June were provided but was not discovered until the next day. I went back with my son, Jeff to get the records for July. I contest that the records were altered during the time of delay as well as the extra day to get the records for July.

Even if the facility and staff believes he fell on his own, why no incident report? Someone or many tried to cover a grave situation? Now a man who was recovering and expected to go home in mid-August was instead on his death bed.

A complaint was filed with the Ohio Health Department in September of 2016. From their investigation of the paperwork they found no evidence of negligence causing Howard's demise based on the paperwork they inspected.

This is a case where there must have been an accident on the night of July 22, 2016 due to negligence that caused this premature death. If it were purely an accident, there should be nothing to hide and it should have been reported as same. The ER at Coshocton Memorial Hospital records clearly state that there was a new injury to his

3

head causing a new bleed. The medical records from the James Hospital in Columbus the next day show there was a new injury and a new bleed and that nothing could be done.

I submit to this court that there was no incident report at the time of a new injury. The report that the investigator from ODH saw must have been fabricated after the fact. I was never informed of and incident. His primary care doctor was never informed that any incident occurred. **That is standard operating procedure for any care giving facility**. The facility refused to give all the medical records upon request. Additionally, I would like to add that earlier in July, I noticed that his partial was not in his mouth and nowhere to be found in his room. I had an attorney send a letter on July 14th to Terrie Kline at Walnut Grove asking for them to take responsibility for replacement. They never responded.

Howard's death certificate Exhibit E, indicates the cause of death was due to an injury, "Intra cranial hemorrhage due to head trauma", sustained at Walnut Grove.

Howard was recovering and was planning on going home for additional therapy and recovery in mid-August, instead had to be buried.

I have suffered an incalculable amount in pain and sorrow. I have and will suffer an economic shortfall from not having his income over his expected remaining life. I am asking for a monetary settlement in the amount of $251,312 due to his loss of income as calculated on Exhibit G and punitive damages due to abuse at a nursing home of treble damages for a total of $753,937. In addition, I have unreimbursed medical expenses of $1,040 dating from July 22, the date of the incident, until his death.

Nancy L. Scott

*Nancy L Scott*

4